JOHN B. READ et al., Appellants, v SOPHIE HENZEL, Respondent.

Fourth Department, April 6, 1979

APPEARANCES OF COUNSEL

*Basloe, Basloe & Gallagher (Evalyn Basloe* and *Joseph S. Basloe* of counsel), for appellants.

*Francis T. Cuda* for respondent.

### OPINION OF THE COURT

SIMONS, J.

The action is for $15,000,000 in damages allegedly resulting from defendant's failure to sell her real estate, now sold to another, to plaintiffs. Special Term dismissed the complaint, holding that enforcement of the agreement to sell was barred by the Statute of Frauds.

In 1974 defendant and her husband (now deceased) owned property in Colonie, New York, as tenants by the entirety. Plaintiff Read was an employee of plaintiff Ionic Mining Development Co., Ltd. and he approached defendant for the purpose of acquiring her property.[*] After examining it and discussing the terms of sale, Read sent defendant a letter "to confirm our discussions". He offered to purchase the property for $220,000 and he set forth the various other terms of purchase. Relevant here are the recitations concerning the mortgage:

"2. a) If our initial down payment was made in the amount of $100,000.00, you would be agreeable to arranging a mortgage with us at an annual rate of 9% on the balance ($120,000.00).

"b) If our initial down payment was made in the amount of $150,000.00, you would be agreeable to arranging a mortgage with us at an annual rate of 8% on the balance ($70,000.00)."

The letter closed with the statement that "This generally covers our agreement and should suffice until a more formal document can be drawn up" by the lawyers. Typed at the bottom of the page were the words "Accepted By", followed by a line for defendant's signature.

Defendant did not sign the letter on the line provided, however, but instead returned it to Read with several hand-written changes, notably the following:

---

[*] Read did not tell defendant that Ionic was the real buyer but he did tell her he was acting for another. The reason in not disclosing the corporation's identity, of course, was to prevent inflation of the purchase price. Nothing turns on the point on this motion because plaintiffs assert that Read was at all times prepared to assume the obligations of the buyer and to take title in his own name (see *Irvmor Corp. v Rodewald,* 253 NY 472).

"#2, #4, #5 need a little changing.

"#2c We will take a 15 year mortgage, at 8% on $70,000.00 payable each month. A penalty of 1% will be charged you, if for any reason you decide to pay in full before the end of a year.

"#4 Should you buy the property, we would like at least 6 months to relocate. Should an unforeseen problem arise in a clearing of title to our new property we expect you will allow us more time.

"#6 There is old lumber in the wood that my son has stored, that and other material, he will remove.

"Mr. Read:

"As I have made a change here and there, as indicated and written. We hope these will be in agreement with you, and after a down payment, we will have our attorney draw up a mortgage contract. Sincerely, Mrs. W. Henzel

"P.S. The mortgage contract can be made out for less than fifteen years, and arrangements agreeable to both parties."

Plaintiff did not make the down payment referred to in defendant's proposal and no formal contract has been prepared or executed.

Plaintiff alleges, and defendant denies, that he orally accepted the modifications made by defendant. That contention raised a question of fact but if the agreement was otherwise enforceable, the oral acceptance would not prevent plaintiffs from succeeding in this action (see *Tymon v Linoki,* 16 NY2d 293). Nevertheless, the agreement is unenforceable because the parties contemplated further negotiations with respect to a material element of the agreement, the terms of the mortgage (see *Willmott v Giarraputo,* 5 NY2d 250).

The applicable rules are quickly stated. Subdivision 2 of section 5-703 of the General Obligations Law requires contracts concerning real property to be in writing but a contract for the sale of property will not be void if evidenced by a sufficient written note or memorandum subscribed by the party to be charged. The purpose, of course, is to remove uncertainty and prevent imposition through the assertion of unfounded and fraudulent claims. The writing is not itself the agreement, but only evidence of it. If the memorandum is to prove the agreement, it must designate the parties, identify and describe the subject matter and state all the essential and material terms of the agreement *(Villano v G & C Homes,* 46

AD2d 907; cf. *Birnhak v Vaccaro,* 47 AD2d 915, 916). If it does so, the fact that it provides for the subsequent execution of a more formal writing which is not done, will not impair its effectiveness *(Lashway v Sorell,* 51 AD2d 97, 98). If the memorandum does not indicate an intent to later fix and formalize missing terms, the courts will imply them if they can, or reject incomplete terms as surplusage (see *N.E.D. Holding Co. v McKinley,* 246 NY 40; *Lashway v Sorell, supra).* On the other hand, a provision or understanding in the memorandum that a more formal contract is to be executed later, when coupled with the fact that material terms have been omitted or left for future negotiation and settlement, renders the memorandum insufficient. In such a case, it is clear that the parties did not intend the memorandum to evidence their complete or final agreement. Certainly, a memorandum which expressly refers to an essential term of the contract as one to be agreed on subsequently does not meet the requirements of the statute (see *Willmott v Giarraputo,* 5 NY2d 250, 253; *Keystone Hardware Corp. v Tague,* 246 NY 79, 84; *Ansorge v Kane,* 244 NY 395; *Pollak v Dapper,* 219 App Div 455, 456; *Villano v G & C Homes, supra).* And finally, the terms and conditions of a mortgage subject to which a purchaser is to take title to real property are essential and material elements of the contract *(Willmott v Giarraputo, supra; Keystone Hardware Corp. v Tague, supra; Pollak v Dapper, supra; Osta v Jarrett,* 27 AD2d 882, 883; *Monaco v Levy,* 12 AD2d 790).

The dispositive issue in this case is the uncertainty surrounding the terms of the mortgage to be given back. Conceivably, a schedule of amortization could be implied, as appellant suggests. But the rule that missing terms may be implied rests upon the assumption that the parties intended the memorandum to be the complete contract, that had there been doubt or uncertainty with respect to the missing term, the parties would have provided for further negotiations or for a more formal contract before the agreement was to bind them.

The weakness in plaintiff's case is that the memorandum indicates that it was not intended to bind the parties. The writing does not prove an agreement, not because the amortization schedule is missing, but rather, as Special Term correctly held, because it indicates that the parties contemplated further negotiations on the mortgage terms. Thus, Read's original letter referred to the lawyers preparing a "more formal document" and defendant stated that the mortgage

contract would be drawn up after receipt of a down payment (which was not forthcoming). Additionally, she suggested that the term could be less than the 15 years specified "if agreeable to both parties" and she omitted the monthly amount to be paid to amortize principal in paragraph 2c. While these various considerations separately might not foreclose plaintiffs, taken together they manifest an intention by the parties that the mortgage terms be settled in the future.

The order should be affirmed.

DILLON, P. J., HANCOCK, JR., CALLAHAN and MOULE, JJ., concur.

Order unanimously affirmed, with costs.