**THETA PRODUCTS, INC.,**
**d/b/a Sprague Industries,**
**Plaintiff, Appellant,**

v.

**ZIPPO MANUFACTURING**
**COMPANY, Defendant,**
**Appellee.**

No. 00–2089.

United States Court of Appeals,
First Circuit.

May 8, 2001.

**4**

Guido R. Salvadore, with whom Salvadore & Salvadore were on brief, for appellant.

Brian T. Must, with whom, Gregg D. Orsag, Metz Schermer & Lewis, L.L.C., W. James McKay, and Adler Pollock & Sheehan, P.C. were on brief, for appellee.

Before TORRUELLA, Chief Judge, BOWNES, Senior Circuit Judge, and LIPEZ, Circuit Judge.

BOWNES.

The plaintiff-appellant, Theta Products, Inc. d/b/a Sprague Industries ("Theta"), appeals the district court's decision that granted summary judgment in favor of the defendant-appellee, Zippo Manufacturing Company ("Zippo"). For the reasons stated below, we affirm the district court's decision.

### I.

We describe the facts briefly here, but go into them in greater detail where necessary for our discussion of the issues. Theta, a Rhode Island corporation, manufactures, through its Jadco division, a line of specialty advertising products. Zippo is a Pennsylvania corporation. In 1997, Zippo inquired whether Theta was interested in using Zippo as a distributor of Jadco's specialty advertising products. In December of 1997, discussions ensued between James Baldo (Zippo's vice president), Michael Schuler (Zippo's president and CEO), and Robert Terino (Theta's president). Discussions continued over the next few months. By June of 1998, no written agreement was finalized and discussions ceased.

On December 17, 1998, Theta filed suit in the District Court of Rhode Island. In a six-count complaint Theta alleged breach of contract, anticipatory breach, fraud in the inducement, reliance, punitive damages and damages for services rendered.[1] Zippo filed a motion to dismiss; this motion was denied. Zippo thereafter filed a motion for summary judgment. The district court granted Zippo's motion for summary judgment[2] and Theta appeals.[3]

### II.

We review the district court's grant of summary judgment de novo. *Dubois v.*

---

1. The parties do not dispute that the district court correctly determined that Rhode Island substantive law applies.

2. The district court granted the motion for summary judgment as to Counts I–V, but denied it as to Count VI. Subsequently, the parties resolved the only remaining count

(Count VI) and it has been removed from the case.

3. In the same order, the district court denied Theta's motion to amend its complaint. Theta does not appeal this denial and we need not discuss it.

*United States Dep't of Agric.,* 102 F.3d 1273, 1283 (1st Cir.1996). Summary judgment may be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To be considered material, a disputed fact must have the potential to "affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). We view the facts in the light most favorable to the non-moving party. *N.Y. State Dairy Foods, Inc. v. N.E. Dairy Compact Comm'n,* 198 F.3d 1, 3 (1st Cir.1999), *cert. denied,* 529 U.S. 1098, 120 S.Ct. 1833, 146 L.Ed.2d 777 (2000). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505 (emphasis in original).

Theta argues that the district court erred in granting summary judgment in favor of Zippo because genuine issues of material fact exist. Theta maintains that the genuine issues of material fact are as follows: (1) "whether or not the parties had made an oral agreement"; (2) "whether or not the oral agreement was comprised of those matters which constitute the essential terms of a contract"; and (3) "[a]ssuming that [the parties] had reached an oral agreement containing the essential terms of a contract . . . whether or not the parties intended to be bound by those terms." Appellant's Br. at 22. These are not genuine issues of material fact; they are questions of law arising from the legal consequences of the facts. The facts are undisputed; the dispute lies in the legal analysis of the facts.

■ Commercial transactions in Rhode Island are governed by the Uniform Commercial Code ("UCC"). *See* R.I. Gen Laws § 6A–1–101 (1998). To be enforceable, a contract for the sale of goods worth $500 or more must be in writing. *Id.* § 6A–2–201(1). There are several exceptions to the writing requirement:

> A contract which does not satisfy the requirements of subsection (1) but which is valid in other respects is enforceable,
>
> (a) If the goods are to be specially manufactured for the buyer and are not suitable for sale to others in the ordinary course of the seller's business and the seller, before notice of repudiation is received and under circumstances which reasonably indicate that the goods are for the buyer, has made either a substantial beginning of their manufacture or commitments for their procurement; or
>
> (b) If the party against whom enforcement is sought admits in his or her pleadings, testimony or otherwise in court that a contract for sale was made, but the contract is not enforceable under this provision beyond the quantity of goods admitted; or
>
> (c) With respect to goods for which payment has been made and accepted or which have been received and accepted (§ 6A–2–606).

*Id.* § 6A–2–201(3).

Theta attempts to persuade us that Theta and Zippo entered into an oral agreement and that both parties intended to be bound by that agreement, thereby exempting them from the writing requirement. *See id.* § 6A–2–204. Theta's attempt fails. The record reveals that Zippo did not intend to be bound until an agreement was finalized in writing.

■ Mutual assent to be bound by a contract must be shown objectively. *Supe-*

*rior Boiler Works, Inc. v. R.J. Sanders, Inc.*, 711 A.2d 628, 633 (R.I.1998) ("The offer and the acceptance must be sufficient to manifest objectively the parties' mutual assent to be bound by a contractual relationship."); *UXB Sand & Gravel, Inc. v. Rosenfeld Concrete Corp.*, 641 A.2d 75, 79 (R.I.1994) ("A contract exists when each party has manifested an objective intent to promise or be bound."); *Smith v. Boyd*, 553 A.2d 131, 133 (R.I.1989) ("A contract is a consensual endeavor. To form a valid contract, each party to the contract must have the intent to promise or be bound.") (internal citation omitted).

The evidence shows that Zippo did not intend to be bound by any contractual relationship until the final contract was reduced to writing and signed by both parties. The parties never reached a final written agreement.

On December 26, 1997, Schuler and Baldo of Zippo and Terino of Theta had a three-way phone conversation. They discussed a possible distributorship agreement between the parties. Subsequently, Terino of Theta wrote a letter to Baldo of Zippo. The letter reads in pertinent part:

> This letter is in reference to our conversation of December 26, 1997 in which you requested a preliminary outline of an agreement which would make Zippo Mfg. the sole and exclusive distributor of the products presently sold under the name Jadco....

The "preliminary" terms of the agreement indicated that Zippo would guarantee the purchase of $2 million in merchandise annually.

Shortly thereafter, on January 23, 1998, Schuler sent a letter to Terino. With the letter, Schuler enclosed a "draft of a Dis-

tribution Agreement that was prepared by our legal counsel." Changes were made to the draft agreement by Schuler and various terms "were open as [the parties] have not yet had a discussion concerning payment and shipment terms." Schuler also noted: "I realize that we have had limited discussion concerning the terms of this Agreement and I am sending it to you with the interest of expediting the drafting process so we can get to a final document." The document enclosed was merely a draft: it was an unsigned document with handwritten changes scribbled upon it and blanks not yet filled in.

A revised draft of the distribution agreement was sent on February 5, 1998, from Terino to Schuler. This time, Terino made changes to the document. The "entered into" dates remained blank and the document was not signed. Terino invited more negotiations in his letter, by stating: "If there is anything in there that is unacceptable to you, please let me know."

Schuler responded on February 13, 1998, with yet another revised draft.[4] He made further modifications to the draft. The "entered into" dates were still left blank and the document was unsigned. Schuler concluded the letter by saying: "Hopefully a final agreement can be reached so that I can execute it...."

On March 6, 1998, Zippo revised the draft again, incorporating changes that the parties had discussed earlier in the week. The changes provided that Zippo would purchase $6 million worth of advertising specialty products over the course of three years. If Zippo failed to purchase $6 million, it would pay Theta fifteen percent of the shortfall. In this letter, Schuler apologized for the delay in finalizing a contract.

4. Though the date on the letter is "February 13, 1997," it is clear that this letter was written on February 13, 1998. The fax header indicates that it was received on February 13, 1998.

Again, the "entered into" dates were blank; corrections were made directly on the draft document; and the document remained unsigned.

On March 18, 1998, Zippo faxed a memo to Theta. It is clear from this memo that a final agreement had not yet been reached and Zippo did not intend to be bound until that time. The memo indicated that pricing remained an open issue and Zippo stated that "nothing can move forward without it .... [and Zippo] cannot give any direction until pricing is received and contract is approved." The memo further indicated that Zippo was still "working on" various issues and "all [was] based on signed contract."

On April 2, 1998, Zippo faxed another memo to Theta. This memo reiterated Zippo's position that it did not intend to be bound until a final agreement was reduced to writing: "[This] covers everything that we could think of from when the contract is signed until we are ready to push the button to introduce the line with our own catalog." Zippo also invited Theta to visit Zippo to "go over and finalize the entire plan for the changeover."

■ Theta argues that Zippo did intend to be bound prior to a final, written agreement. Theta claims that in May of 1998, in a three-way telephone conversation, Baldo of Zippo stated: "Don't worry, Bob [Terino], this is a done deal." Theta contends that this statement suffices to prove that the parties had reached an agreement, and that both parties intended to be bound by it. The undisputed facts, however, indicate otherwise. The statement by Baldo needs to be put in context: this statement was made by Zippo when Theta "expressed concern about the delay in signing a formal contract." When placed in context, it seems clear that Theta knew that there would be no agreement until a formal contract was signed, which never

happened. This telephone remark is too slender a reed on which to base an oral contract.

The facts in the record are undisputed. The record shows that Zippo did not intend to be bound until a final contract was reduced to writing. The parties engaged in ongoing negotiations. A Distributorship Agreement was never finalized: the drafts that were circulated between the parties contained handwritten changes and modifications; "entered into" dates remained blank; and the documents were never signed.

■ Ongoing negotiations are evidence that the parties did not intend to yet be bound. *See Superior Boiler*, 711 A.2d at 634 (holding that ongoing negotiations are evidence "that the parties had not yet settled into a contractual agreement.") (footnote omitted). "To hold otherwise would conflict sharply with [the] court's policy of affording parties ... the freedom 'to negotiate without fear that they will be bound by mere discussion.'" *UXB*, 641 A.2d at 80 (quoting *Smith*, 553 A.2d at 134). We have held that the contemplation of a formal, written contract "gives rise to a strong inference that the parties do not intend to be bound until the formal document is hammered out." *Gel Sys. Inc. v. Hyundai Eng'g & Constr. Co.*, 902 F.2d 1024, 1027 (1st Cir.1990) (internal quotation marks omitted).

We find that Zippo had no intent to be bound by any agreement until that agreement was finalized and reduced to a writing signed by both parties. Throughout the early months of 1998, the parties engaged in ongoing negotiations. Terms of the agreement were altered and drafts of the agreement were circulated for modifications and approval. No final, written agreement ever came to fruition. Therefore, the exceptions to the writing require-

ment of the statute of frauds do not apply and Theta's breach of contract claim was properly rejected by the district court.

■ Theta also argues that the district court erred in granting summary judgment in favor of Zippo on Theta's claims for fraud in the inducement, reliance and punitive damages. "Fraud in the inducement is defined as '[m]isrepresentation as to the terms, quality or other aspects of a contractual relation, venture or other transaction that leads a person to agree to enter into the transaction with a false impression or understanding of the risks, duties or obligations she has undertaken.'" *Bourdon's, Inc. v. Ecin Indus.*, 704 A.2d 747, 753 (R.I.1997) (quoting Black's Law Dictionary 661 (6th ed.1990)) (alteration in original).

The Rhode Island Supreme Court has stated that "[i]n order for fraudulent misrepresentation or deceit to be found, the complaining party must show not only that the defendant had an intention to deceive, but the complainant also must present sufficient proof that the party detrimentally relied upon the fraudulent representation." *Asermely v. Allstate Ins. Co.*, 728 A.2d 461, 464 (R.I.1999); *see also Travers v. Spidell*, 682 A.2d 471, 472–73 (R.I.1996) ("To establish a prima facie damages claim in a fraud case, the plaintiff must prove that the defendant made a false representation intending thereby to induce plaintiff to rely thereon and that the plaintiff justi-

fiably relied thereon to his or her damage.") (internal quotation marks omitted).

After careful review of the entire record, we hold that Theta's claims for fraud in the inducement, reliance and punitive damages must fail. Nothing in the record indicates that Zippo made any false representation to Theta in order to induce it to rely. In fact, the record reveals the contrary. As noted above, Zippo repeatedly made it clear to Theta that it did not intend to be bound until a final agreement was reduced to writing. The evidence does not show that Zippo intended to deceive Theta. No genuine issue of material fact exists and the district court correctly granted summary judgment in favor of Zippo on Theta's claims for fraud in the inducement, reliance and punitive damages.

### III.

After careful review of the entire record, we hold that the district court correctly granted Zippo's motion for summary judgment because there were no genuine issues of material fact.

*Affirmed.*