January 15, 2026

**Supreme Court**

No. 2024-203-Appeal.
(PC 24-1639)

1100 North Main LLC  :

v.  :

Shoreby Hill Properties, Inc.  :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email: opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

|  |  |
|---|---|
| 1100 North Main LLC | : |
| v. | : |
| Shoreby Hill Properties, Inc. | : |

Present:  Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

## O P I N I O N

**Justice Long, for the Court.**  The plaintiff, 1100 North Main LLC (plaintiff), appeals from a Superior Court judgment in favor of the defendant, Shoreby Hill Properties, Inc. (defendant), dismissing the plaintiff's complaint for declaratory and equitable or monetary relief related to a purchase and sales agreement concerning the defendant's property located at 301 Harris Avenue in Providence, Rhode Island (the Harris Avenue property).  The trial justice also quashed two notices of *lis pendens* that the plaintiff had recorded on the Harris Avenue property and denied the plaintiff's motion to amend its complaint.

This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided.  After considering the parties' written and oral submissions and

reviewing the record, we conclude that cause has not been shown and that we may decide this case without further briefing or argument. For the reasons set forth herein, we affirm the judgment of the Superior Court.

**Facts and Procedural History**

We draw the following facts from within the four corners of plaintiff's complaint. *See Twenty Eleven, LLC v. Botelho*, 127 A.3d 897, 900 (R.I. 2015).

Two agreements related to the purchase and sale of real property are central to plaintiff's complaint: one between plaintiff and the Providence Firefighters Realty Corp. (the Firefighters) concerning property owned by the Firefighters located on Printery Street (Printery Street property), and a second between the Firefighters and defendant concerning defendant's Harris Avenue property.

Regarding the agreement between plaintiff and the Firefighters, the Firefighters agreed to sell the Printery Street property to plaintiff "upon the successful acquisition of replacement properties." The plaintiff thus "sought out replacement properties" and, in March 2024, located the Harris Avenue property, which defendant's broker had listed for sale. The defendant's broker hosted a viewing of the Harris Avenue property; and defendant's broker learned about the agreement between plaintiff and the Firefighters and that the proceeds of the sale of the Printery Street property would fund the Firefighters' purchase of the Harris Avenue property.

Regarding the agreement between the Firefighters and defendant concerning the Harris Avenue property, the Firefighters, initially through its broker, communicated an offer to purchase the Harris Avenue property for $725,000, which defendant's broker accepted via a written email to the Firefighters' broker. The email further indicated that defendant's attorney would forward a formal purchase and sales agreement to the Firefighters' attorney.

In the following days, however, the Firefighters learned that defendant had accepted an offer from a different party. The Firefighters therefore increased the purchase price to $740,000 and the due-diligence period to thirty days. The defendant "accepted the offer to amend" and defendant's attorney forwarded "a draft 'Real Property Purchase and Sales Agreement'" (the purchase and sales agreement) to the Firefighters' attorney, who amended and returned it to defendant's attorney. Less than an hour later, "an email sent on behalf of [defendant's attorney] * * * instructed [the Firefighters' attorney] to 'have the Firefighters [sign] and return the [purchase and sales] agreement, and then [defendant's attorney] will send for [the] clients' signatures.'" (Brackets omitted.)

The Firefighters signed the purchase and sales agreement on March 20, 2024, but defendant refused to execute it and reportedly accepted another offer. The plaintiff thereafter filed a complaint seeking a declaration that a contract between defendant and the Firefighters regarding the Harris Avenue property exists;

judgment in favor of plaintiff for breach of that contract; specific performance or, alternatively, monetary damages; and an award of attorneys' fees, costs, and expenses.

The defendant moved to dismiss the complaint and sought sanctions and an order quashing two notices of *lis pendens* filed by plaintiff on the Harris Avenue property.

At a hearing held on May 1, 2024, before a justice of the Superior Court, plaintiff argued that the attorneys for defendant and the Firefighters had provided their assent to the purchase and sales agreement and therefore a binding contract had been formed, and that plaintiff had "made it implicit that they were involved in the transaction," which granted them standing to seek relief. The plaintiff also argued that the Firefighters had provided them an assignment that would grant them standing (1) to challenge the nonconsummation of the sale of the property and (2) to obtain a *lis pendens*. The trial justice took the matter under advisement, but, before he issued a decision, plaintiff sought to amend its complaint. The plaintiff's proposed first amended complaint contained additional factual allegations regarding the contract formation and a partial factual allegation related to a purported assignment from the Firefighters to plaintiff.

The trial justice issued a written decision dismissing the complaint and quashing the *lis pendens* on the grounds that plaintiff's allegations failed to satisfy

the statute of frauds, or to establish standing. At a subsequent hearing concerning its motion to amend the complaint, plaintiff argued that the proposed first amended complaint asserted additional facts that would satisfy deficiencies with regard to standing identified by the court in its written decision. The trial justice nevertheless denied the motion to amend, reasoning that amendment would be "futile because the [c]ourt can find, as a matter of law, that no enforceable contract exists between the parties" given that plaintiff has not been able to provide facts sufficient to satisfy the statute of frauds.

On May 22, 2024, the trial justice entered final judgment incorporating its decisions with respect to defendant's motion to dismiss and motion to quash, and plaintiff's motion to amend. The plaintiff timely appealed.

We consider whether the purchase and sales agreement concerning the Harris Avenue property constitutes a binding contract in accordance with the statute of frauds as codified at G.L. 1956 § 9-1-4, as well as whether the trial justice erred by denying plaintiff's motion to amend.

**Motion to Dismiss**

"In reviewing the grant of a motion to dismiss pursuant to Rule 12(b)(6), this Court applies the same standard as the hearing justice." *EDC Investment, LLC v. UTGR, Inc.*, 275 A.3d 537, 542 (R.I. 2022) (quoting *Chariho Regional School District, by and through Chariho Regional School Committee v. State*, 207 A.3d

1007, 1012 (R.I. 2019)). As such, we "look no further than the complaint, assume that all allegations in the complaint are true, and resolve any doubts in a plaintiff's favor." *Id.* (quoting *Pontarelli v. Rhode Island Department of Elementary and Secondary Education*, 176 A.3d 472, 476 (R.I. 2018)). Allegations more in the nature of legal conclusions, however, are not necessarily assumed to be true. *DiLibero v. Mortgage Electronic Registration Systems, Inc.*, 108 A.3d 1013, 1016 (R.I. 2015). This Court will affirm a trial justice's decision granting a motion to dismiss when it is clear beyond a reasonable doubt that the plaintiff would not be entitled to relief under any set of facts that could be proven in support of their claim. *See EDC Investment, LLC*, 275 A.3d at 542.

The plaintiff primarily argues that the trial justice applied the wrong standard in evaluating defendant's motion to dismiss. Specifically, plaintiff alleges that the trial justice "erred * * * by refusing to accept as true the legal conclusions in the complaint supported by the factual averments." Based on our review of the trial justice's decision and plaintiff's complaint, however, we are satisfied that the trial justice applied the correct standard in evaluating defendant's motion to dismiss.

The trial justice appropriately relied on the factual assertions in plaintiff's complaint to establish the factual basis upon which its claims for relief rested, but the trial justice did not take as true plaintiff's legal assertions regarding the existence of a contract for the sale of the Harris Avenue property—that was not error. The

question of whether a contract has been formed is a quintessential question of law. *See North Farm Home Owners Association, Inc. v. Bristol County Water Authority*, 315 A.3d 933, 942 (R.I. 2024) ("The determination of whether a contract exists is a question of law * * *.") (quoting *Coccoli v. Town of Scituate Town Council*, 184 A.3d 1113, 1118 (R.I. 2018)).  The trial justice correctly determined that plaintiff's complaint failed because there were threshold matters that deprived plaintiff of the ability to establish the existence of an agreement binding upon defendant—namely, a signed writing sufficient to satisfy the statute of frauds.[1]

The statute of frauds, codified at G.L. 1956 § 9-1-4, bars certain actions as a matter of law.  The relevant statutory language at issue in this dispute provides that

> "No action shall be brought:
>
> "(1) Whereby to charge any person upon any contract for the sale of lands, tenements, or hereditaments, or the making of any lease thereof for a longer time than one year;
>
> "* * *
>
> "(7) * * * unless the promise or agreement upon which the action shall be brought, or some note or memorandum thereof, shall be in writing, and signed by the party to be charged therewith, or by some other person by him or her thereunto lawfully authorized." Section 9-1-4 (1), (7).

---

[1] We assume without deciding that plaintiff could establish its standing to challenge the nonconsummation of the transaction between the Firefighters and defendant on the basis of the late-disclosed assignment from the Firefighters.

- 7 -

This Court has explained, however, that "[t]he statute of frauds does not require contracts for the sale of land to be in writing" as long as any oral agreement is "evidenced by a sufficient memorandum." *Loffredo v. Shapiro*, 274 A.3d 782, 790 (R.I. 2022) (quoting *UXB Sand & Gravel, Inc. v. Rosenfeld Concrete Corp.*, 641 A.2d 75, 78 (R.I. 1994)). "Such memoranda must set out who are the seller and the buyer, their respective intention to sell and to purchase, a description of the subject matter of the sale, the purchase price, and terms of payment." *MacKnight v. Pansey*, 122 R.I. 774, 782, 412 A.2d 236, 241 (1980). The essential terms of the sale need not appear in a single writing but "can be included * * * by a reference in that writing to another document which supplies the missing information." *Loffredo*, 274 A.3d at 790-91 (quoting *UXB Sand & Gravel, Inc.*, 641 A.2d at 78). Nevertheless, we strictly construe and apply the statute of frauds, which "expressly requires that the required note or memorandum be '*in writing*' and that it be '*signed by the party to be charged* * * * [.]'" *Id.* at 791 (quoting § 9-1-4(7)).

This Court recently addressed the statute of frauds in *Loffredo*, where, as here, a buyer sent a purchase and sales agreement to the seller's agent, who communicated that the seller would sign the document. *Loffredo*, 274 A.3d at 786, 791. This Court concluded that the series of communications relating to the transaction, although considerably more voluminous than the single email in this case, did not constitute a "note or memorandum" sufficient to satisfy the statute of frauds because "[t]he

- 8 -

document at the center of [the] case * * * lack[ed] a signature from [the sellers], who were the parties to be charged." *Id.* at 792.

The instant case presents the same question as *Loffredo*—whether an unsigned purchase and sales agreement suffices to bind the nonsigning party on the basis of communications made by the seller's representative that allegedly evince the nonsigning party's intent to be bound. Based on our prior pronouncements, the answer to that question is "no." The plaintiff argues that defendant's attorney's signature on an email agreeing to the terms of the purchase and sales agreement constitutes a memorandum sufficient to satisfy the statute of frauds; however, the existence of a signature in the abstract is not the relevant question in assessing compliance with the statute of frauds. Instead, this Court looks to the written note or memorandum at issue—here, the purchase and sales agreement signed by the Firefighters but left unsigned by defendant—to determine whether it contains a signature from "the party to be charged." Section 9-1-4(7). We conclude that the allegations in plaintiff's complaint do not and cannot establish that defendant signed the purchase and sales agreement concerning the Harris Avenue property; rather it is clear from the complaint that defendant "refused to formerly [*sic*] execute the Agreement * * *." Therefore, defendant cannot be bound by the terms of the purchase and sales agreement concerning the Harris Avenue property. *See Loffredo*, 274 A.3d at 792; *see also MacKnight*, 122 R.I. at 782-83, 412 A.2d at 241.

Moreover, even while we take as true the allegation that defendant's attorney's office accepted the Firefighters' modifications to the purchase and sales agreement via email, the email also conveyed that defendant's attorney's office would transmit the purchase and sales agreement "for [the defendant's] signatures." To form a binding contract, a party's objective intent to be bound is a necessary precondition to acceptance. *See Smith v. Boyd*, 553 A.2d 131, 133 (R.I. 1989). We cannot conclude that a statement that a seller's attorney will forward a writing to the seller for signature manifests an objective intent to bind that seller. That is especially true where, as here, the allegations in plaintiff's complaint assert that defendant subsequently refused to execute the purchase and sales agreement. Rather, as the trial justice observed, the email exchange between the Firefighters and defendant's attorney is, at most, evidence of the "sometimes-ministerial role that attorneys play in facilitating real estate transactions."

Negotiations between these parties simply did not result in a sufficient writing for this Court to reach a different conclusion than the trial justice. Accordingly, the trial justice did not err in concluding that plaintiff's complaint failed to satisfy the statute of frauds, and the complaint was appropriately dismissed. Moreover, because we affirm the trial justice's decision granting defendant's motion to dismiss on the basis of the statute of frauds, we likewise affirm his decision to quash plaintiff's *lis pendens* on the Harris Avenue property.

## Motion to Amend

With respect to our review of a decision denying a motion to amend a complaint, we will not disturb the ruling unless the trial justice committed an abuse of discretion. *Lomastro v. Iacovelli*, 56 A.3d 92, 94 (R.I. 2012). In the normal course, leave to amend "shall be freely given" under the Superior Court Rules of Civil Procedure. Super. R. Civ. P. 15(a). However, leave to amend need not be allowed if amendment would be futile. *Gannon v. City of Pawtucket*, 200 A.3d 1074, 1080 (R.I. 2019). We conclude that the trial justice did not abuse his discretion in declining to grant plaintiff's motion to amend.

The plaintiff argues that leave to amend should have been granted because its amended complaint addressed an issue of standing identified in the trial justice's decision on the defendant's motion to dismiss. However, standing was just one of two grounds on which the trial justice dismissed the original complaint; the other, as we have discussed, was the statute of frauds, and the amended complaint did not present any additional factual allegations, that, if taken as true, could lead the trial justice to believe that the plaintiff satisfied that statute. Thus, it would have been futile to allow amendment of the complaint even if the plaintiff could establish standing. Consequently, we are satisfied that the trial justice did not abuse his discretion in denying the plaintiff's motion to amend. *See Hogan v. McAndrew*, 131 A.3d 717, 722 (R.I. 2016).

## Conclusion

Accordingly, the trial justice's judgment granting the defendant's motion to dismiss and denying the plaintiff's motion to amend is affirmed.

We remand the papers to the Superior Court.



**STATE OF RHODE ISLAND**

**SUPREME COURT – CLERK'S OFFICE**

Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | 1100 North Main LLC v. Shoreby Hill Properties, Inc. |
| **Case Number** | No. 2024-203-Appeal. (PC 24-1639) |
| **Date Opinion Filed** | January 15, 2026 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice Melissa A. Long |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Brian P. Stern |
| **Attorney(s) on Appeal** | For the Plaintiff: Michael J. Riley, Esq. |
| | For the Defendant: Gregory S. Estabrooks, Esq. |