May 25, 2022

**Supreme Court**

No. 2020-233-Appeal.
(NC 18-102)

Kenneth Loffredo et al.                    :

v.                    :

Stephen A. Shapiro et al.                    :

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Kenneth Loffredo et al.          :

v.          :

Stephen A. Shapiro et al.          :

Present:  Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

**O P I N I O N**

**Justice Robinson, for the Court.**  The plaintiffs, Kenneth Loffredo and Michelle Loffredo (the Loffredos), appeal from the Newport County Superior Court's grant of summary judgment in favor of the several defendants on all eight counts set forth in their third amended complaint.  On appeal, the Loffredos contend that the hearing justice: (1) improperly interpreted and applied G.L. 1956 § 9-1-4 (the Statute of Frauds) in deciding that that statute could properly be invoked as a defense to claims stemming from an alleged agreement concerning the purchase and sale of a particular residential condominium owned by Stephen A. Shapiro and Lisa R. Shapiro (the Shapiros) in Newport, Rhode Island; (2) erroneously granted summary judgment against the Loffredos with respect to their several claims of tortious conduct; and (3) erroneously ruled that G.L. 1956 § 5-20.5-17(b) does not

provide a private right of action to an aggrieved party "unless and until there has first been a [Department of Business Regulation] * * * finding of a violation of § 5-20.5-14(a)."

For the reasons set forth in this opinion, it is our view that the hearing justice correctly granted summary judgment with respect to all counts except for Count Eight, as to which we consider fact-finding to be necessary. Accordingly, we affirm the judgment of the Superior Court in part, and we vacate the judgment in part.

# I

## Facts and Travel[1]

We glean the following facts from: the third amended complaint (the complaint); the parties' motions for summary judgment; the oppositions thereto; and the transcript of the hearing held on May 21, 2020.

---

[1]     The following brief description of the roles of the various parties to this appeal should serve as helpful guidance to the reader. The Shapiros were the owners and potential sellers of a particular residential condominium in Newport (the Property). Kathleen Greenman and Michelle Kirby were the Shapiros' real estate agents; both were at the pertinent time employed by Gustave J.S. White Real Estate Co. d/b/a Gustave White Sotheby's International Realty (the Gustave White entity). In January of 2018, Kenneth Loffredo and Michelle Loffredo (the Loffredos) on the one hand and John A. Krichavsky and Alys Krichavsky (the Krichavskys) on the other hand were actively seeking to purchase the Property. Kendra Toppa was the real estate agent for the Loffredos; she was at the pertinent time employed by Lila Delman Real Estate. Amy L. Hoag was the real estate agent for the Krichavskys; she was at the pertinent time employed by Maximum Return, Inc. d/b/a Re/Max Professionals of Newport (Re/Max).

## A

## The Underlying Transaction

On January 30, 2018, the Loffredos, accompanied by their real estate agent (Ms. Toppa), attended a showing of the Property. At that showing, the Loffredos learned that the sellers (the Shapiros) had already received an offer from certain prospective buyers. (It eventually became clear that those prospective buyers were the Krichavskys.) Later that same day, the Loffredos submitted to the Shapiros a proposed purchase and sales agreement, offering to purchase the Property for $1,475,000.[2] In view of the competing offers, the Shapiros requested that both the Loffredos and the Krichavskys submit their "highest and best" offers by 4:00 p.m. on January 31.[3]

At approximately 12:00 p.m. on January 31, the Loffredos submitted to the Shapiros a proposed purchase and sales agreement, which constituted their "best and

---

[2] It is clear from the record that all communications and offers by the Loffredos and the Krichavskys relating to the Property were channeled through their respective real estate agents to one or both of the Shapiros' real estate agents. As such, in describing the various communications regarding the Property, we will not specifically mention the various real estate agents, except when a special circumstance requires us to do so.

[3] It is not clear from the record whether or not the terms "highest and best" and "best and final" were used interchangeably in communications relative to the potential purchase of the Property. However, that terminological issue has no bearing on our resolution of the instant case; and we shall treat the two terms as being synonymous.

final" offer, in which they increased their earlier offer by $50,000 and proposed an earlier closing date than they had formerly proposed and also "waived the inspections contingency provision." At approximately 5:07 p.m. on that same day, the Krichavskys submitted their "highest and best" offer to the Shapiros.[4]

Shortly thereafter, according to the complaint, Ms. Toppa (the Loffredos' real estate agent) received a telephone call from Ms. Greenman (one of the Shapiros' real estate agents), in which Ms. Greenman allegedly stated that the Shapiros had accepted the Loffredos' offer.[5] During that telephone call, Ms. Toppa requested that the Shapiros sign and return the Loffredos' proposed purchase and sales agreement as soon as possible. Ms. Greenman allegedly assured Ms. Toppa that the proposed purchase and sales agreement "definitely would be returned by the next morning" and that it had "been decided" that the Property would belong to the Loffredos.[6]

---

[4]    Originally, the Loffredos and the Krichavskys were told by the Shapiros to submit their "highest and best" offers by 4:00 p.m. on January 31. However, it is undisputed that, prior to the Krichavskys submitting their offer, Ms. Hoag (their agent) contacted Ms. Greenman (one of the Shapiros' agents) to inquire whether a late offer would be considered by the Shapiros. Ms. Greenman responded that "it was not too late" to do so and that the Krichavskys could still submit their offer even though that would be after the original 4:00 p.m. deadline.

[5]    We note that, in their answers, all of the defendants deny the allegation that the Shapiros orally accepted the Loffredos' highest and best offer.

[6]    When her deposition was taken by the Loffredos' attorney, Ms. Greenman stated that she did not recall telling Ms. Toppa that a "decision [had] been made;" her recollection was that she told Ms. Toppa that the Shapiros "wanted to accept"

- 4 -

At approximately the same time as Ms. Greenman contacted Ms. Toppa, Ms. Kirby (another of the Shapiros' real estate agents) contacted Ms. Hoag (the Krichavskys' real estate agent) and allegedly told her that the Shapiros had accepted the Loffredos' offer.[7] In addition, Ms. Kirby revealed to Ms. Hoag that the two offers were "close monetarily." Given our eventual holding in Part IV.H, *infra*, it is of potential significance that Ms. Kirby also allegedly informed Ms. Hoag that the Loffredos' offer had "no contingency for a home inspection."[8]

Ms. Hoag then called her clients, the Krichavskys, and shared with them the information that Ms. Kirby had disclosed to her. Upon learning the particulars of the Loffredos' offer, the Krichavskys decided to submit another offer and to waive the home inspection contingency that had been part of their prior offer. At approximately 6:43 p.m. on January 31, the Krichavskys submitted their revised offer to both of the Shapiros' agents, who conveyed it to the Shapiros. Later that night, at approximately 9:15 p.m., Ms. Greenman contacted Ms. Toppa and

the Loffredos' offer "subject to [their] sons approving it, and they wouldn't sign anything until that happened."

[7] When her deposition was taken by the Loffredos' attorney, Ms. Kirby stated that she did not remember whether she actually used the word "accepting" or if she instead told Ms. Hoag that the Shapiros were "working with" the other potential purchasers of the Property.

[8] Ms. Kirby also stated in her deposition that she did not remember telling Ms. Hoag that the two offers were "close monetarily" or that "the other offer had no contingencies[.]"

explained that the Krichavskys had submitted another offer and that, although she did not know what was going to happen, she would contact Ms. Toppa once again the following morning. Ms. Toppa then called the Loffredos to inform them that the Krichavskys had been allowed to submit another offer.

Following the just-described sequence of events, Ms. Greenman and Ms. Kirby (on behalf of the Shapiros) contacted Ms. Toppa to inquire whether the Loffredos would be willing to increase their offer by $100,000. However, the Loffredos chose not to do so. Ultimately, the Krichavskys agreed to purchase the Property for $1,600,000, with no home inspection contingency.

**B**

**The Proceedings in Superior Court**

On March 27, 2018, the Loffredos filed a complaint in the Superior Court, naming as defendants, in addition to the Shapiros: Ms. Greenman, Ms. Kirby, and the Gustave White entity (collectively, the Gustave White defendants). In due course, on February 8, 2019, the Loffredos filed their third amended complaint.[9]

---

[9] As of the time of the filing of the third amended complaint, the following persons or entities were named as defendants in one or more of the complaint's eight counts: the Shapiros, Ms. Greenman, Ms. Kirby, the Gustave White entity, the Krichavskys, Ms. Hoag, and Re/Max.

Jonathan A. Shapiro was also named as a defendant, but only in his capacity as trustee of the Stephen A. Shapiro Trust and not in his individual capacity. Any collective reference in this opinion to "the Shapiros" refers only to the sellers, Stephen A. Shapiro and Lisa R. Shapiro, and not to Jonathan A. Shapiro.

That complaint contained counts sounding in breach of contract; promissory estoppel; equitable estoppel; and fraud and deceit against the Shapiros. The complaint also included counts sounding in fraud and deceit and negligent misrepresentation against the Gustave White defendants. The complaint also alleged that Ms. Hoag, Re/Max, and the Krichavskys were liable for tortious interference with contractual relations or, in the alternative, tortious interference with prospective contractual relations. Finally, the complaint alleged that Ms. Greenman, Ms. Kirby, and Ms. Hoag, in their individual capacities, had violated § 5-20.5-14(a) and were therefore subject to the penalty provisions of § 5-20.5-17(b).[10]

### 1. The Motions for Summary Judgment

On August 20, 2019, Ms. Hoag and Re/Max jointly filed a motion for summary judgment on all counts. Thereafter, the Shapiros, the Gustave White defendants, and the Krichavskys filed their own separate motions for summary judgment on all counts. On May 21, 2020, a hearing was held on the several motions for summary judgment, to each of which the Loffredos had objected.

---

[10] The various counts in the third amended complaint were titled as follows: Count One—"Breach of Contract;" Count Two—"Promissory Estoppel;" Count Three—"Equitable Estoppel;" Count Four—"Fraud and Deceit;" Count Five—"Negligent Misrepresentation;" Count Six—"Violation of R.I. Gen. Laws Chapter 5-20.5;" Count Seven—"Tortious Interference with Contractual Relations;" and Count Eight—"Tortious Interference with Prospective Contractual Relations."

The Shapiros for their part argued that the allegations of breach of contract, promissory estoppel, equitable estoppel, and fraud and deceit were all barred by the Statute of Frauds. Relying on this Court's precedent, they pointed out that "the very purpose for which the statute of frauds was enacted * * * [was] protection against the assertion of unfounded claims" and that, accordingly, said statute "must be enforced as drafted."

The Gustave White defendants contended that the Loffredos' claims of fraud and deceit and negligent misrepresentation were barred by the Statute of Frauds. They argued that "allegations of fraud standing alone are insufficient to circumvent the statute of frauds * * *." They further argued that the "mere agreement on terms, the preparation of [a] purchase and sale agreement and even the signing of that agreement by one party" were insufficient to overcome the principle that the "statute of frauds must be strictly construed."

With respect to the Loffredos' allegation of tortious interference with contractual relations, Ms. Hoag and Re/Max argued that that claim was also barred by the Statute of Frauds. They contended that, because "the statute of frauds requires that an agreement for the purchase of real estate * * * be in writing" and because there was "no such writing," there was "no contract with which [Ms. Hoag and Re/Max] could have interfered." As for the claim of tortious interference with prospective contractual relations, Ms. Hoag and Re/Max argued that the Loffredos

had "not satisfied the elements of that claim" because there was neither evidence of a "business relationship" between the Shapiros and the Loffredos nor was there evidence that either Ms. Hoag or Re/Max had "intentionally interfered" with any such alleged relationship.

The Krichavskys advanced the same argument as did the Gustave White defendants with respect to the Loffredos' allegation of tortious interference with contractual relations. As for the claim of tortious interference with prospective contractual relations, the Krichavskys argued that the nature of the "competitive bidding process" in which the parties had been engaged "simply [did] not rise to the level of [intentional] interference" necessary to prove tortious interference with prospective contractual relations.

With respect to the Loffredos' statutory claim, Ms. Hoag argued that § 5-20.5-14(a) does not authorize an aggrieved party "to file a private right of action as a result of any such violations," but rather vests in the director of the Department of Business Regulation the authority "to determine whether or not a violation has occurred" and to levy penalties. Ms. Hoag further contended that neither does § 5-20.5-17(b) authorize a private right of action. The Gustave White defendants relied on the same arguments as those articulated by Ms. Hoag with respect to the statutory claim.

- 9 -

In response to the defendants' arguments, the Loffredos argued that the Shapiros were liable for breach of contract because they had "accepted [the] Loffredos' offer" and that, therefore, there was a valid oral contract between the two parties that the Shapiros breached when they sold the Property to the Krichavskys. As for the requirement of the Statute of Frauds that there be a writing, the Loffredos contended that the "combination of written documents and communications" between the parties, when considered "as a whole," was "sufficient to raise an issue of fact as to [the] sufficiency of a memorandum to satisfy the statute of frauds."

With respect to their claim of fraud and deceit, the Loffredos argued that there was "more than sufficient evidence in the record that establishes a genuine issue of material fact" and that the burden was on the defendants to show the absence of a genuine issue of material fact.

The Loffredos also argued that the Statute of Frauds did not bar the two tortious interference counts; they contended that an oral contract cannot "be interfered with regardless of whether it's enforceable."

As for the statutory claims, the Loffredos argued that the "plain language" of § 5-20.5-17(b) "provides for an express right of action to a court in cases where a licensed real estate agent acts with dishonesty, bad faith, false promises and so forth * * *." The Loffredos further contended that a prior determination by the director of the Department of Business Regulation was not necessary and that, if the General

Assembly had wanted aggrieved parties to "have [to] go to the [Department of Business Regulation] first before going to court, [the General Assembly] could have said that clearly in the statute * * *." The Loffredos argued that, there being no such express precondition, an aggrieved "party has the right to go to court for relief if there's a violation" of § 5-20.5-14(a).

### 2. The Hearing Justice's Decision

On May 21, 2020, after reviewing the arguments of the parties and the evidence submitted in support of those arguments, the hearing justice considered each of the eight counts and held that the Loffredos' claims for breach of contract, promissory estoppel, fraud and deceit, and tortious interference with contractual relations were all barred by the Statute of Frauds. Accordingly, he granted summary judgment against the Loffredos on those counts.

With respect to the Loffredos' allegations of equitable estoppel, negligent misrepresentation, and tortious interference with prospective contractual relations, the hearing justice ruled that, because the Loffredos had failed to offer evidence that they could establish all of the essential elements necessary to succeed on those claims, summary judgment should enter against them.

As for the statutory count, the hearing justice held that neither § 5-20.5-14(a) nor § 5-20.5-17(b) provided aggrieved parties with a private right of action, and he therefore granted summary judgment against the Loffredos on that count.

- 11 -

In rendering his decision, the hearing justice commented that the Loffredos' complaint was "an interesting and complex attempt to circumvent the statute of frauds * * *." He added that, if he were to allow the Loffredos' complaint to proceed, that "would undermine all [of] the public policy decisions [and] reasons for the statute of frauds * * *."

For these several reasons, the hearing justice granted summary judgment in favor of defendants on all counts, and a final judgment was entered against the Loffredos on September 15, 2020. A timely notice of appeal was filed three days later.

## II

### Standard of Review

"We review Superior Court rulings with respect to summary judgment motions in a *de novo* manner." *Papudesu v. Medical Malpractice Joint Underwriting Association of Rhode Island*, 18 A.3d 495, 497 (R.I. 2011). In doing so, we employ "the same standards and rules used by the hearing justice." *Newstone Development, LLC v. East Pacific, LLC*, 140 A.3d 100, 103 (R.I. 2016) (quoting *Daniels v. Fluette*, 64 A.3d 302, 304 (R.I. 2013)); *see also Fogarty v. Palumbo*, 163 A.3d 526, 532 (R.I. 2017). It is also well established that "[w]e review the evidence in a light most favorable to the nonmoving party and will affirm the judgment if there exists no genuine issue of material fact and the moving party is entitled to

- 12 -

judgment as a matter of law." *Henry v. Media General Operations, Inc.*, 254 A.3d 822, 834 (R.I. 2021) (quoting *Lynch v. Spirit Rent-A-Car, Inc.*, 965 A.2d 417, 424 (R.I. 2009)).

It is a basic principle that "[o]nce the party seeking summary judgment has alleged the absence of any disputed issues of material fact, the opposing party, to avoid summary judgment, must come forward with proof sufficient to establish the existence of a specific, material, triable fact." *Barrett v. Barrett*, 894 A.2d 891, 894 (R.I. 2006). We have expressly stated that "[a]lthough summary judgment is recognized as an extreme remedy, * * * to avoid summary judgment the burden is on the nonmoving party to produce competent evidence that prove[s] the existence of a disputed issue of material fact[.]" *Sullo v. Greenberg*, 68 A.3d 404, 407 (R.I. 2013) (internal quotation marks omitted). Moreover, the nonmoving party "cannot rest upon mere allegations or denials in the pleadings, mere conclusions or mere legal opinions." *Newstone Development, LLC*, 140 A.3d at 103 (quoting *Daniels*, 64 A.3d at 304). Rather, "the requirement is that there be no *genuine* issue of *material* fact." *Henry*, 254 A.3d at 835 (emphasis in original) (quoting *Deutsche Bank National Trust Co. for Registered Holders of Ameriquest Mortgage Securities, Inc. v. McDonough*, 160 A.3d 306, 311 (R.I. 2017)).

As for issues of statutory interpretation, it is a basic principle that "questions about the meaning of statutes are reviewed *de novo* by this Court." *Planned*

*Environments Management Corp. v. Robert*, 966 A.2d 117, 121 (R.I. 2009); *see also*

*In re Kapsinow*, 220 A.3d 1231, 1233 (R.I. 2019).

## III

## The Statute of Frauds

Since the Statute of Frauds is crucial to our analysis of many issues in this case, we begin by setting forth the relevant provisions of that venerable and significant statute. After an introductory clause declaring: "No action shall be brought," the pertinent language of the statute reads as follows:

> "(6) [w]hereby to charge any person upon any agreement or promise * * * upon the sale of any interest in real estate;
>
> "(7) * * * unless the promise or agreement upon which the action shall be brought, or some note or memorandum thereof, shall be in writing, and signed by the party to be charged therewith, or by some other person by him or her thereunto lawfully authorized." Section 9-1-4(6), (7).

It is well settled that "'[t]he statute of frauds does not require contracts for the sale of land to be in writing[,]' but if such a contract be an oral agreement, *it will be enforced only if evidenced by a 'sufficient memorandum.'*" *UXB Sand & Gravel, Inc. v. Rosenfeld Concrete Corp.*, 641 A.2d 75, 78 (R.I. 1994) (emphasis added) (quoting *Preble v. Higgins*, 43 R.I. 10, 16, 109 A. 707, 710 (1920)); *see also MacKnight v. Pansey*, 122 R.I. 774, 782, 412 A.2d 236, 241 (1980) ("Such memoranda must set out who are the seller and the buyer, their respective intention to sell and to purchase, a description of the subject matter of the sale, the purchase

- 14 -

price, and terms of payment."). We have also explained that the required note or memorandum "need not comprise a single writing: essential terms of a sale can be included in the writing itself or by a reference in that writing to another document which supplies the missing information." *UXB Sand & Gravel, Inc.*, 641 A.2d at 78. It should at all times be borne in mind that the Statute of Frauds expressly requires that the required note or memorandum be "*in writing*" and that it be "*signed by the party to be charged * * *.*" Section 9-1-4(7) (emphasis added).

Finally, "it remains axiomatic that[,] in order to satisfy the statute of frauds, a memorandum must contain evidence that 'a contract has been made by [the parties] or offered by the signatory [of the memorandum] to the other [party].'" *UXB Sand & Gravel, Inc.*, 641 A.2d at 79 (quoting 2 E. Allan Farnsworth, *Farnsworth on Contracts* § 6.7, at 136 (1990)). Moreover, we have expressly stated that "[t]he Statute of Frauds * * * must be strictly construed and strictly applied * * *." *Brochu v. Santis*, 939 A.2d 449, 453 (R.I. 2008); *see also Mutual Development Corp. v. Ward Fisher & Co., LLP*, 47 A.3d 319, 324 (R.I. 2012); *Heyman v. Adeack Realty Co.*, 102 R.I. 105, 111, 228 A.2d 578, 582 (1967). These principles of statutory construction are derived from our "policy of affording parties to business transactions the freedom to negotiate without fear that they will be bound by mere discussion." *UXB Sand & Gravel, Inc.*, 641 A.2d at 80 (internal quotation marks omitted).

## IV

## Analysis

## A

## The Breach of Contract Claim (Count One)

The Loffredos contend that the hearing justice improperly interpreted the Statute of Frauds in deciding that said statute could properly be invoked with respect to the alleged oral contract concerning the purchase and sale of the Property. However, it is our definite opinion that, because the alleged oral contract at issue clearly involves the purchase and sale of real property (thereby falling squarely within the purview of the Statute of Frauds), it is clear beyond peradventure that any reliance on an alleged oral agreement without more flies in the face of the unequivocal language of the Statute of Frauds.

We are likewise unpersuaded by the Loffredos' further contention that their proposed purchase and sales agreement together with: (1) "telephone calls and confirming text messages" between Ms. Greenman and Ms. Toppa; (2) Mr. Shapiro's text message to his son in which he stated that it "looks like we've sold Bonniecrest [*i.e.*, the Property];"[11] (3) an e-mail from the Shapiros (which was

---

[11] The actual words of the text message sent by Mr. Shapiro to his son with respect to the Property are noteworthy; they read as follows:

> "looks like we've sold Bonniecrest. I'll send docs to Luke tomorrow for his comments…1,525 cash; no

signed by Mr. Shapiro) to Ms. Greenman in which he stated that "we're looking for the offer from [the] Loffredo[s];" and (4) Ms. Greenman's reply e-mail to the Shapiros, attaching the Loffredos' proposed purchase and sales agreement, and also providing the fax number of the Gustave White entity "so the Shapiros could sign and return" it that night are "collectively * * * sufficient" to satisfy the "writing" requirement of the Statute of Frauds.

It is clear to us, as it was to the hearing justice, that there is in the record of this case no note or memorandum (even when the just-referenced communications are viewed as a totality) sufficient to satisfy the Statute of Frauds. *See MacKnight*, 412 A.2d at 241. We are entirely unpersuaded by the Loffredos' contention that the mélange of telephone calls, text messages, and e-mail communications somehow constitutes a "note or memorandum * * * in writing, and signed by the party to be charged therewith," as the Statute of Frauds so explicitly requires. Section 9-1-4(7).

The document at the center of this case is the Loffredos' proposed purchase and sales agreement, which undoubtedly sets forth the Loffredos' understanding of what they believed should be the terms of the anticipated real estate transaction, including a description of the Property, the purchase price, and the parties to be

---

contingencies; out end of March[.] 2 offers, both maxed out at same number; 2 different agencies; 1 buyer from W. Hartford; other from Naples, FL"

charged.  Very significantly, however, as the Loffredos conceded in their answers to interrogatories, the proposed purchase and sales document lacks a signature from the Shapiros, who were the parties to be charged.[12]

Bearing in mind the basic principle that the Statute of Frauds is to "be strictly construed and strictly applied," it is clear that the record contains no writing sufficient to satisfy the Statute of Frauds.  *Brochu*, 939 A.2d at 453; *see also Mutual Development Corp.*, 47 A.3d at 324.  Accordingly, we perceive no error on the part of the hearing justice in granting summary judgment on this count.

## B

### The Promissory Estoppel Claim (Count Two)

The Loffredos also contend that, in spite of the writing requirement in the Statute of Frauds, the alleged oral agreement at issue is enforceable pursuant to the doctrine of promissory estoppel.  We are unpersuaded by this contention.  This Court has consistently held that "an oral agreement [for the purchase and sale of real estate] precludes recovery * * * 'irrespective of whether the action is based on the contract,

---

[12]    We have described as follows the "widespread real estate practice" relative to purchase and sales agreements:

> "[A]n offer to purchase realty is made in writing by the purchaser's signature on a purchase-and-sales-agreement form, *and a contract formed by the seller's countersignature on the same document*."  *Smith v. Boyd*, 553 A.2d 131, 134 (R.I. 1989) (emphasis added).

- 18 -

* * * or on a theory of estoppel.'" *Brochu*, 939 A.2d at 453 (quoting *Zexter v. Cerrone*, 107 R.I. 92, 94, 265 A.2d 328, 328-29 (1970)). As such, "any attempt to apply the doctrine of promissory estoppel to real estate * * * agreements so as to take them out of the statute would, in the absence of fraud, defeat the very purpose for which clause Sixth [of the Statute of Frauds] was enacted, specifically, protection against the assertion of unfounded claims."[13] *Id.* at 453-54 (quoting *Heyman*, 102 R.I. at 108, 228 A.2d at 580). Because the alleged oral agreement at issue is unenforceable due to the lack of a sufficient writing signed by the party to be charged,[14] we are completely satisfied that the Shapiros were entitled to summary judgment on this count.

---

[13] In their brief, the Loffredos contend that the facts of the instant case are distinguishable from those at issue in *Brochu v. Santis*, 939 A.2d 449 (R.I. 2008). They aver that, in contrast to the facts set forth in *Brochu*, "[h]ere, there *are* claims of fraud, and there is ample evidence in the record to support such claims." (Emphasis in original.) However, that argument is meritless—since, as we point out in Part IV.D, *infra*, there is no evidence in the record which supports the contention that a false representation was made by any of the defendants.

[14] The Loffredos quote at length from our recent opinion in *Salvatore v. Palangio*, 247 A.3d 1250 (R.I. 2021), which upheld a jury finding that a piece of property was acquired pursuant to the doctrine of promissory estoppel. *Salvatore*, 247 A.3d at 1263. The facts of *Salvatore* are quite different from those in the instant case; but, for present purposes, we need not focus on those differences. It suffices to note that the Statute of Frauds was not raised by the appellant in *Salvatore*.

# C

## The Equitable Estoppel Claim (Count Three)

The Loffredos also contend that the hearing justice erred in granting summary judgment on Count Three, which invoked the doctrine of equitable estoppel.

It is important to keep in mind that we have expressly stated that the "[i]ndispensable" requirements for the successful invocation of the doctrine of equitable estoppel are the establishment of: first, "an affirmative representation or equivalent conduct on the part of the person against whom the estoppel is claimed which is directed to another for the purpose of inducing the other to act or fail to act in reliance thereon; and secondly, that such representation or conduct in fact did induce the other to act or fail to act to his injury." *Faella v. Chiodo*, 111 A.3d 351, 357 (R.I. 2015) (quoting *Cigarrilha v. City of Providence*, 64 A.3d 1208, 1213 (R.I. 2013)).

We have consistently emphasized that "[e]quitable estoppel is 'extraordinary' relief, which 'will not be applied unless the equities *clearly* [are] balanced in favor of the part[y] seeking relief.'" *Sturbridge Home Builders, Inc. v. Downing Seaport, Inc.*, 890 A.2d 58, 67 (R.I. 2005) (emphasis in original) (quoting *Southex Exhibitions, Inc. v. Rhode Island Builders Association, Inc.*, 279 F.3d 94, 104 (1st Cir. 2002)). And we have bluntly stated that "equitable estoppel is not a favored doctrine * * * [and should be] applied carefully and sparingly and only from

necessity." *Faella*, 111 A.3d at 357 (quoting 28 Am. Jur. 2d *Estoppel and Waiver* § 166 at 633 (2011)). We have also made it clear that "[e]ach of the elements of [equitable] estoppel must be proved with the requisite degree of certainty; no element may be left to surmise, inference, or speculation." *Id.* (internal quotation marks omitted).

It is our opinion that the Loffredos failed to raise a genuine issue of material fact relative to their claim of equitable estoppel. Upon careful consideration of the record, it is clear to us that the Loffredos' allegations concerning their claim of equitable estoppel are entirely conclusory in nature. *See Newstone Development, LLC*, 140 A.3d at 103 ("[T]he nonmoving party bears the burden of proving by competent evidence the existence of a disputed issue of material fact and cannot rest upon mere allegations or denials in the pleadings, *mere conclusions* or mere legal opinions.") (emphasis added) (internal quotation marks omitted); *see also Great American E & S Insurance Co. v. End Zone Pub & Grill of Narragansett, Inc.*, 45 A.3d 571, 574 (R.I. 2012). As the hearing justice stated in his bench decision, there was no evidence before him "that any statement induced the plaintiffs to act."

For that reason, it is our opinion that the hearing justice did not err in holding that the Loffredos failed to present evidence sufficient to withstand a motion for summary judgment on this count. *See Greenwich Bay Yacht Basin Associates v. Brown*, 537 A.2d 988, 992 (R.I. 1988) (recognizing that there are instances where

- 21 -

there are insufficient facts "to warrant the application of the doctrine of equitable estoppel"); *see also* 28 Am. Jur. 2d *Estoppel and Waiver* § 166 (2022) ("[W]hen the facts and the reasonable inferences therefrom are undisputed, it is a question of law whether equitable estoppel has been established.") (footnote omitted).

## D

## Fraud and Deceit (Count Four)

The Loffredos next contend that the hearing justice erred in holding that the Statute of Frauds barred their claim for fraud and deceit. They argue that they "reasonably relied" on the statements of the Shapiros, Ms. Greenman, and Ms. Kirby concerning the "highest and best offer process" in which, according to the complaint, said defendants affirmatively represented that the Shapiros "intended to accept and would accept the offer which they decided was the better of the two best and final offers."

In support of that contention, the Loffredos rely on this Court's decision in *Bourdon's, Inc. v. Ecin Industries, Inc.*, 704 A.2d 747 (R.I. 1997), in which we explicitly held that the Statute of Frauds "is inapplicable to a claim of misrepresentation, fraud, and/or deceit * * *." *Bourdon's, Inc.*, 704 A.2d at 757. In *Bourdon's, Inc.*, the plaintiffs alleged that the defendants had failed to pay on a promissory note. *Id.* at 750. In response, the defendants counterclaimed, alleging "misrepresentation, fraud, and/or deceit," and the plaintiffs contended on appeal that

the trial justice erred in failing to charge the jury on the Statute of Frauds. *Id.* at 750, 757. In contrast with the case before us, the record in *Bourdon's, Inc.* was replete with evidence to support a claim for fraud and deceit, including several oral misrepresentations made by the plaintiffs. *Id.* at 750, 754-55, 757. In the instant case, the Loffredos have failed to present any evidence that the defendants made false representations of fact relative to the highest and best offer process.

Given the failure of plaintiffs to have presented such evidence, we view this case as being far closer from a legal perspective to *Brochu* than to *Bourdon's, Inc.*, with which it has only superficial similarities. In *Brochu*, we noted that we have historically "refused to allow allegations of fraud, standing alone, to circumvent the Statute of Frauds because in so doing we 'would reopen the floodgates of litigation which were closed when clause sixth [of the Statute of Frauds] became law.'" *Brochu*, 939 A.2d at 453 (quoting *Dooley v. Lachut*, 103 R.I. 21, 25, 234 A.2d 366, 368 (1967)). We went on to say that, with respect to the Statute of Frauds, "mere allegations of fraud, without accompanying evidence, are insufficient to remove an oral contract from [that statute's] purview." *Id.*

As previously discussed, there is no signed note or memorandum sufficient to satisfy the Statute of Frauds in the instant case. Moreover, the record does not contain evidence that would show that a false representation was made by any of the

defendants.[15]   Accordingly, we perceive no error in the hearing justice's grant of summary judgment on this count.

E

**Negligent Misrepresentation (Count Five)**

In their complaint, the Loffredos allege that the Gustave White defendants "made misrepresentations of material fact to plaintiffs" in which they represented that the Shapiros "intended to and would accept the better of the two best and final offers to be submitted" by the Loffredos and the Krichavskys.  Furthermore, the Loffredos allege that Ms. Greenman and Ms. Kirby "knew of the misrepresentations, made the misrepresentations without knowledge as to their truth or falsity, or made the misrepresentations under circumstances in which they ought to have known of their falsity."   Moreover, the Loffredos contend that "[i]n making such misrepresentations," Ms. Greenman and Ms. Kirby "failed to exercise reasonable care or competence to obtain or communicate true information."

On appeal, the Loffredos aver that there "are genuine issues of material fact to be decided by a jury at trial" relative to their claim of negligent misrepresentation. On that basis, they contend that the hearing justice erred in granting summary judgment as to this count.

---

[15]    With respect to the "best and final" offer issue, *see also* Part IV.E, *infra*.

In order to set forth a *prima facie* case of negligent misrepresentation, the plaintiff must establish the following elements: "(1) a misrepresentation of a material fact; (2) the representor must either know of the misrepresentation, must make the misrepresentation without knowledge as to its truth or falsity or must make the representation under circumstances in which he [or she] ought to have known of its falsity; (3) the representor must intend the representation to induce another to act on it; and (4) injury must result to the party acting in justifiable reliance on the misrepresentation." *Zarrella v. Minnesota Mutual Life Insurance Co.*, 824 A.2d 1249, 1257 (R.I. 2003) (quoting *Mallette v. Children's Friend and Service*, 661 A.2d 67, 69 (R.I. 1995)).

It is clear from the record that, in the words of the hearing justice, "[t]here is no evidence * * * that [the] Gustave White defendants misrepresented a material fact in this case." Because the Loffredos failed to establish the elements necessary to state a claim for negligent misrepresentation, it is our view that the hearing justice did not err in granting summary judgment in defendants' favor on this count.

**F**

**The Statutory Count (Count Six)**

In their appeal from the grant of summary judgment as to Count Six (which invoked chapter 20.5 of title 5 of the General Laws), the Loffredos contend that the hearing justice erroneously construed § 5-20.5-17(b) when he ruled that that

provision does not provide a private right of action to an aggrieved party "unless and until there has first been a [Department of Business Regulation] disciplinary proceeding against the licensed agent or broker and a finding of a violation of § 5-20.5-14(a)."

The Loffredos argue that "§ 5-20.5-17(b) provides for an express private right of action and a civil remedy for an aggrieved person against a licensed agent or broker who violates any of the provisions contained in Chapter 5-20.5, including the various subsection[s] of § 5-20.5-14(a) * * * without the person having to first bring a disciplinary proceeding with the [Department of Business Regulation] and obtain an administrative determination that the licensed professional has committed a violation of § 5-20.5-14(a)." We are unpersuaded by the Loffredos' reading of the statutory provisions at issue.

The pertinent subsections of § 5-20.5-14 of the General Laws read as follows:

> "(a) The director [of the Department of Business Regulation] may, upon his or her own motion, and shall, upon the receipt of the written verified complaint of any person initiating a cause under this section, ascertain the facts and, if warranted, hold a hearing for the suspension or revocation of a license. * * *
>
> "* * *
>
> "(b) The director is authorized to levy an administrative penalty not exceeding two thousand dollars ($2,000) for any violation under this section or the rules and regulations of the department of business regulation."

Additionally, the relevant subsection of § 5-20.5-17 of the General Laws reads as follows:

> "(b) In case any person has received any money, or the equivalent, as a fee, commission, compensation, or profit by or in consequence of a violation of any provision of this chapter, he or she, in addition, is liable to a penalty of not less than the amount of the sum of money received and not more than three (3) times the sum received, as may be determined by the court, which penalty may be recovered in any court of competent jurisdiction by any person aggrieved."

Pursuant to the statutory scheme, an aggrieved party may seek to recover the penalty referenced in § 5-20.5-17(b) only when such a party "has received any money, or the equivalent, as a fee, commission, compensation, or profit *by or in consequence of a violation of any provision of this chapter * * *.*" Section 5-20.5-17(b) (emphasis added). This language is plain and unambiguous; as such, it should be applied as written. *See Unistrut Corp. v. State Department of Labor and Training*, 922 A.2d 93, 98 (R.I. 2007) ("When a statute is clear and unambiguous we are bound to ascribe the plain and ordinary meaning of the words of the statute and our inquiry is at an end."); *see also DeMarco v. Travelers Insurance Co.*, 26 A.3d 585, 616 (R.I. 2011). Accordingly, to recover the penalty referenced in § 5-20.5-17(b) on the basis that a licensed professional has violated

- 27 -

§ 5-20.5-14(a),[16] there must have already been a determination by the director of the Department of Business Regulation that that licensed professional has committed one of the thirty-seven "acts or practices" listed in § 5-20.5-14(a).[17]

As there was no prior determination of a violation by the director of the Department of Business Regulation pursuant to § 5-20.5-14(a) which would entitle the Loffredos to initiate suit pursuant to § 5-20.5-17(b), it is our view that the hearing justice acted correctly in granting summary judgment on this count.

**G**

**Tortious Interference with Contractual Relations (Count Seven)**

The Loffredos also assert that the hearing justice erroneously granted summary judgment on their claim of tortious interference with contractual relations.

---

[16] In our judgment, the hearing justice was correct in ruling that the plain language of G.L. 1956 § 5-20.5-14(a) vests the director of the Department of Business Regulation with the authority, either upon his or her own motion or upon the receipt of a written verified complaint, to investigate alleged misconduct, hold a hearing regarding the suspension or revocation of an individual's real estate license, and sanction an individual who is determined to have committed any of the "acts or practices" expressly referenced in the statute.

[17] Because the General Assembly did not expressly include in § 5-20.5-14 a private cause of action, we decline to conclude that such a cause of action is implied therein. *See Doe v. Brown University*, 253 A.3d 389, 399 (R.I. 2021) ("[P]rinciples of judicial restraint prevent us from creating a cause of action for damages in all but the most extreme circumstances.") (internal quotation marks omitted); *Cullen v. Lincoln Town Council*, 960 A.2d 246, 249 (R.I. 2008) ("The judiciary may not properly create a new cause of action in order to deal with a particular perceived wrong.").

- 28 -

They allege (in language that is rather opaque) that, "[e]ven if the Shapiros were to prevail on their statute of frauds defense, there still was a contract in existence between the Shapiros and the Loffredos" with which Ms. Hoag and the Krichavskys intentionally interfered even though they knew "that the Shapiros had already communicated their acceptance" of the Loffredos' offer. The Loffredos further argue that "[a]s a direct result of the Krichavskys' and [Ms.] Hoag's interference, the Shapiros reneged on their acceptance of the Loffredos' highest and best offer and they refused to sign the Loffredo[s'] P&S agreement."

To establish a *prima facie* case of tortious interference with contractual relations, the aggrieved party "must establish the following four elements: (1) [*the*] *existence of a contract*; (2) the alleged wrongdoer's knowledge of the contract; (3) his [or her] intentional interference; and (4) damages resulting therefrom." *Fogarty*, 163 A.3d at 538 (emphasis added) (internal quotation marks omitted); *see also Doe v. Brown University*, 253 A.3d 389, 398 (R.I. 2021); *Greensleeves, Inc. v. Smiley*, 942 A.2d 284, 293 n.16 (R.I. 2007). And we have further explained that "aggrieved parties must allege and prove not only that the putative tortfeasor intended to do harm to the contract but that they did so without the benefit of any legally recognized privilege or other justification." *Lomastro v. Iacovelli*, 126 A.3d 470, 474 (R.I. 2015) (internal quotation marks omitted); *see also Belliveau Building Corp. v. O'Coin*, 763 A.2d 622, 627 (R.I. 2000).

As we have already explained in some detail *supra*, the alleged oral contract between the Loffredos and the Shapiros is unenforceable pursuant to the Statute of Frauds, and we have determined the Loffredos' other arguments seeking to avoid the Statute of Frauds to be equally unavailing. Because the Loffredos have failed to present evidence of an enforceable contract, we need go no further. Accordingly, we affirm the Superior Court's grant of summary judgment on this count.

**H**

**Tortious Interference with Prospective Contractual Relations (Count Eight)**

The Loffredos also contend that the hearing justice erred in granting summary judgment with respect to their claim of tortious interference with prospective contractual relations. They argue that "even if * * * no actual contract had been formed," by the time that the Krichavskys submitted their eventually successful offer, the Loffredos "had reached the point of having an 'expectancy' that the Shapiros would sign and return their P&S agreement."

The elements of the tort of intentional interference with prospective contractual relations are the following: "(1) the existence of a business relationship or expectancy, (2) knowledge by the interferer of the relationship or expectancy, (3) an intentional act of interference, (4) proof that the interference caused the harm sustained, and (5) damages to the plaintiff." *Fogarty*, 163 A.3d at 540 (internal quotation marks omitted). And we have made it a point to indicate that this tort

- 30 -

requires the showing of "an intentional *and improper* act of interference, not merely an intentional act of interference." *La Gondola, Inc. v. City of Providence, by and through Lombardi*, 210 A.3d 1205, 1221 (R.I. 2019) (emphasis in original) (quoting *Avilla v. Newport Grand Jai Alai LLC*, 935 A.2d 91, 98 (R.I. 2007)).

After considerable reflection, we have determined that the series of events that eventually gave rise to this case requires fact-finding before the merits of Count Eight can be reached. *See generally Estate of Giuliano v. Giuliano*, 949 A.2d 386, 394 (R.I. 2008); *Mitchell v. Mitchell*, 756 A.2d 179, 185 (R.I. 2000). In our considered opinion, the hearing justice erred when he granted summary judgment on this Count in May of 2020 since, when the evidence is viewed in the light most favorable to plaintiff, there were issues of material fact that precluded summary judgment.

Accordingly, we remand the record to the Superior Court for further proceedings relative to the Loffredos' claim of tortious interference with prospective contractual relations.

## V

**Conclusion**

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court with respect to all counts in the complaint except for Count Eight,

and we vacate the judgment as to that count.  The record may be returned to that tribunal.



# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Kenneth Loffredo et al. v. Stephen A. Shapiro et al. |
| **Case Number** | No. 2020-233-Appeal. (NC 18-102) |
| **Date Opinion Filed** | May 25, 2022 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice William P. Robinson III |
| **Source of Appeal** | Newport County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Brian Van Couyghen |
| **Attorney(s) on Appeal** | For Plaintiffs: <br><br> Kevin P. Gavin, Esq. |
| | For Defendants: <br><br> Syd A. Saloman, Esq. <br> Stanley F. Pupecki, Esq. <br> J. Russell Jackson, Esq. <br> Christopher R. Blazejewski, Esq. |